UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AHOUVA STEINBERG,

Plaintiff,

-v-

CUSHMAN & WAKEFIELD, INC., et al.,

Defendants.

CIVIL ACTION NO. 24 Civ. 6470 (DEH) (SLC)

**REPORT AND RECOMMENDATION**

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE DALE E. HO**, United States District Judge:

## I. INTRODUCTION

Plaintiff Ahouva Steinberg claims that Defendants Cushman & Wakefield PLC, Cushman & Wakefield Global, Inc., Cushman & Wakefield U.S., Inc. (together, the "C&W Defendants"),[1] Pinnacle Property Management Services, LLC ("Pinnacle"), Cappelli Development LLC, Cappelli Organization LLC, and RFMCH Huguenot Property Owner, LLC (together, the "Cappelli Defendants"; collectively with the C&W Defendants and Pinnacle, "Defendants") discriminated against her during her employment on the basis of her sex, sexual orientation, and ethnicity, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), 42 U.S.C. § 1981, and the New York State Human Rights Law, N.Y. Exec. Law § 290, et seq. ("NYSHRL"). (ECF No. 46 ("FAC")).

[1] Steinberg named as a defendant but has since "agreed to dismiss" Cushman & Wakefield National Corporation "because the company has been inactive since December 31, 2018," so we respectfully recommend dismissing Cushman & Wakefield National Corporation as a defendant and do not discuss it further. (ECF No. 74 at 5 n.1; see ECF No. 77 at 5 (omitting Cushman & Wakefield National Corporation from definition of "C&W Entities")).

The C&W Defendants move to dismiss all claims against them because Steinberg failed to allege that they were her employer. (ECF Nos. 72; 73; 74; 80 (together, the "Motion")). Steinberg resists. (ECF No. 77). For the reasons set forth below, we respectfully recommend that (i) the Motion be DENIED, and (ii) Cushman & Wakefield National Corporation be DISMISSED as a defendant in this case pursuant to Federal Rule of Civil Procedure 41(a)(2). (See ECF No. 74 at 5 n.1).

## II. BACKGROUND

### A. Factual Background

The facts, presumed true at the pleading stage, are drawn from the FAC. See N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC, 709 F.3d 109, 119 (2d Cir. 2013); Stolarik v. N.Y. Times Co., 323 F. Supp. 3d 523, 529 n.2 (S.D.N.Y. 2018). Because the C&W Defendants move to dismiss based only on their employment relationship, or lack thereof, with Steinberg, we focus on the facts relevant to the Motion.

#### 1. Defendants

3Thirty3, a "285-unit residential property" in New Rochelle, New York, ties the parties together. (ECF No. 46 ¶¶ 2, 17, 20, 30, 63). The Cappelli Defendants are "a group of affiliated entities" "headquartered in Westchester, New York[,]" "owned and/or controlled by real estate developer and Cappelli Organization CEO Louis Cappelli[,]" and "[a]t all times relevant, one or more of these entities partly owned and fully controlled . . . 3Thirty3." (Id. ¶¶ 30, 31, n.1). The Cappelli Defendants "hired the" C&W Defendants "to supply a property management team and manage the daily business of 3Thirty3." (Id. ¶ 31). The Cappelli Defendants, however, were "highly involved in" the C&W Defendants' "management of 3Thirty3 and exerted a great deal of

control over the management team[.]" (Id. ¶ 32). In fact, the Cappelli Defendants "directly funded [the C&W Defendants'] payroll account for all Cushman & Wakefield employees working at or for 3Thirty3, and actively monitored [the] payroll account at all times relevant." (Id. ¶ 53).

Defendant Cushman & Wakefield PLC "is a publicly traded, multi-billion-dollar, global real estate services firm with U.S. headquarters in Chicago, Illinois" and a principal place of business in London, England. (ECF No. 46 ¶ 20). "At all relevant times," it "supplied building management services for" 3Thirty3. (Id.) In 2020, it bought Pinnacle, "a domestic limited liability company with its principal place of business" in Manhattan. (Id. ¶¶ 20, 24). "All duties of hiring, firing, discipline, pay, and health insurance" for 3Thirty3 staff, "were assigned to Cushman & Wakefield PLC, and it tended to act as a centralized control of labor relations along with Pinnacle and the Cappelli Defendants." (Id. ¶ 20). The other C&W Defendants—Cushman & Wakefield Global, Inc., and Cushman & Wakefield U.S., Inc.—are subsidiaries of Cushman & Wakefield PLC and share a principal place of business in Chicago, Illinois. (Id. ¶¶ 21–23). Steinberg's employment records list Pinnacle and the C&W Defendants as her employer. (Id. ¶¶ 20–23, 29).

**2. Steinberg**

From February to August 2022, Steinberg, "a gay, Jewish woman[,]" was the property manager at 3Thirty3. (ECF No. 46 ¶ 17). On February 18, 2022, "Steinberg received an offer letter of employment from 'Cushman & Wakefield.'" (Id. ¶ 25). The name "Cushman & Wakefield" appeared several times in the letter:

- "Cushman & Wakefield (The Company) is pleased to extend to you a conditional offer of employment."
- "Your employment with Cushman & Wakefield will be as an employee at-will, which means that either you or Cushman & Wakefield may terminate the employment relationship at any time with or without notice or cause."

- The letter states that if she needs to reach out to HR, she should contact "our HR department at HRServices@cushwake.com".

(Id.)

At 3Thirty3, Steinberg reported directly to Maya Liepa, the regional property manager, "however, Mitch Bodner, the Senior Vice President of Development and Asset Management for" the Cappelli Defendants, "also directly supervised both Steinberg's and Liepa's job performance on a day-to-day basis and exercised substantial ongoing control over their work-related activities." (Id. ¶¶ 4, 18). Steinberg "worked 12-hour days, Monday through Friday, managing a leasing team of five employees who worked Wednesday through Sunday[,]" which "therefore required [Steinberg] to be available each weekend to respond to her leasing team as needed." (Id. ¶ 19). Both Steinberg's and Liepa's work email addresses ended with "@cushwake.com[.]" (Id. ¶ 26). Liepa's and other employees' email signatures stated that "Pinnacle is now Cushman & Wakefield" and included "the 'cushmanwakefield.com' website." (Id. ¶ 28). The bi-weekly direct deposits into Steinberg's bank account, presumably her paychecks, "came from a bank account named 'Cushman & Wakefield Payments EFT.'" (Id. ¶ 27).

On August 18, 2022, "Steinberg requested her Employment Data Report from The Work Number Service Team." (ECF No. 46 ¶ 29 (the "Report")). The Report "listed" her "prior employer . . . as 'Cushman & Wakefield/Pinnacle' with an 'Employer Address' of 225 West Wacker Drive Suite 3000, Chicago, IL 60606. The entities affiliated with that address are: (1) Cushman & Wakefield Global, Inc.; (2) Cushman & Wakefield National Corporation; and (3) Cushman & Wakefield U.S., Inc." (Id.) "Defendants all had immediate control over Steinberg, including the power to pay her salary, hire, fire, or otherwise control her daily activities." (Id. ¶ 57).

"Bodner visited 3Thirty3 several times per week and kept in constant contact with its Cushman & Wakefield management team; through Bodner, the Cappelli [Defendants] had the final say in all management decisions, including, but not limited to, all hiring and firing decisions regarding Cushman & Wakefield employees working at or for 3Thirty3." (ECF No. 46 ¶ 35). Liepa speculated on several occasions that Bodner "might terminate her own employment" or look "for someone to replace Steinberg as property manager." (Id. ¶¶ 36, 37). Bodner and another employee of the Cappelli Defendants "interviewed and granted prior approval for all managers, assistant managers, and maintenance supervisors—who were all hired by Liepa and/or Steinberg during the period of Steinberg's employment[.]" (Id. ¶ 38). Although Liepa and Steinberg interviewed candidates for open positions, they could not hire "anyone on behalf of Cushman & Wakefield without Bodner's consent on behalf of Cappelli Development." (Id. n.2). The FAC details Bodner's and Louis Cappelli's involvement in the day-to-day oversight and management of 3Thirty30, Liepa, and Steinberg, including specific instructions and directions concerning "job postings, hiring, building signage, event promotion, parking issues, vendor issues, hardware issues, apartment staging, utilities, and repairs." (Id. ¶ 39; see also id. ¶¶ 40–56).

Steinberg "was surprised by the Cappelli [Defendants'] unusual degree of involvement with building management and the day-to-day workflow of 3Thirty3's Cushman & Wakefield property management team. Typically, when a property owner hired Cushman & Wakefield . . . to manage its property, the owner would normally step back and let the management firm handle the day-to-day building management affairs. The Cappelli [Defendants'] constant control over such matters was not something Steinberg had expected or seen to that extent before." (Id. ¶ 52).

**B. Procedural Background**

On August 27, 2024, Steinberg filed the original Complaint. (ECF No. 1). The Cappelli Defendants filed an Answer while Pinnacle and now-dismissed Defendants Cushman & Wakefield, Inc., Cushman & Wakefield 1, Inc., and Cushman & Wakefield Capital Services, LLC (the "Original C&W Defendants") filed motions to dismiss. (ECF Nos. 30; 38; 41 (the "First Motions to Dismiss")).

In the FAC, which Steinberg initially filed on November 18, 2024 and refiled on November 19, 2024, she removed all claims and allegations against the Original C&W Defendants and added the C&W Defendants as new defendants. (Compare ECF No. 1 with ECF No. 46; see also ECF Nos. 44; 51–54, 69–71). Steinberg claims that all Defendants were her employer and that their discriminatory acts based on her sex, sexual orientation, and Jewish ethnicity amounted to disparate treatment and a hostile work environment in violation of Title VII, § 1981, and the NYSHRL. (See generally ECF No. 46).

The Court denied the First Motions to Dismiss as moot in light of the FAC. (ECF No. 45). On December 2, 2024, Pinnacle and the Cappelli Defendants filed Answers to the FAC. (ECF Nos. 55; 56). On January 10, 2025, the Court held an initial case management conference and entered a case management plan. (ECF Nos. 59; 61; 64; 65). On January 31, 2025, the C&W Defendants filed the Motion. (ECF No. 72). Steinberg filed an opposition, and the C&W Defendants filed a reply. (ECF Nos. 77; 80). Judge Ho referred the Motion for a report and recommendation. (ECF No. 28).

## III. JURISDICTION AND VENUE

The Court has original subject matter jurisdiction over the Title VII and § 1981 claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the NYSHRL claims pursuant to 28 U.S.C. § 1367. Personal jurisdiction and venue are uncontested.

## IV. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(6)

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in favor of the plaintiff. See N.J. Carpenters Health Fund, 709 F.3d at 119; Trujillo v. City of N.Y., No. 14 Civ. 8501 (PGG), 2016 WL 10703308, at *4 (S.D.N.Y. Mar. 29, 2016).[2] "[T]he Court must assess whether the complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Trujillo, 2016 WL 10703308, at *4 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Myers v. City of N.Y., No. 11 Civ. 8525 (PAE), 2012 WL 3776707, at *2 (S.D.N.Y. Aug. 29, 2012) (quoting Iqbal, 556 U.S. at 678).

"'[A] plaintiff alleging employment discrimination or retaliation is not required to plead facts sufficient to establish a prima facie case.'" Trujillo, 2016 WL 10703308, at *4 (quoting Krasner v. HSH Nordbank AG, 680 F. Supp. 2d 502, 512 (S.D.N.Y. 2010)). Rather, "'the ordinary rules for assessing the sufficiency of a complaint' under Fed. R. Civ. P. 8(a)'s notice pleading

[2] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

standard apply." Id. (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002)). Under Rule 8(a), a plaintiff must set forth a "short and plain statement of the claim," Fed. R. Civ. P. 8(a), "with sufficient factual 'heft to sho[w] that the pleader is intitled to relief.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). A complaint "cannot withstand a motion to dismiss unless it contains factual allegations sufficient to raise a 'right to relief above the speculative level[,]'" id. (quoting Twombly, 550 U.S. at 555), and "present claims that are 'plausible on [their] face.'" Id. (quoting Twombly, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. A complaint that pleads facts "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility of entitlement to relief." Twombly, 550 U.S. at 557 (internal citation omitted). If "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," id. at 558, or if the plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed." Id. at 570. The Second Circuit has explained that, where a complaint "consist[s] of nothing more than naked assertions, and set[s] forth no facts upon which a Court could find a violation of the Civil Rights Act, fails to state a claim under [Rule] 12(b)(6)." Martin v. N.Y. State. Dep't of Mental Hygiene, 588 F.2d 371, 372 (2d Cir. 1978).

**B. Employer Status**

The C&W Defendants move to dismiss the claims against them on the ground that Steinberg has not alleged that they were her employer. (See generally ECF No. 74).

A primary element of Steinberg's discrimination claims is the "existence of an employer-employee relationship[.]" Gulino v. N.Y. State Educ. Dep't, 460 F.3d 361, 370 (2d Cir. 2006)

(analyzing Title VII claim);[3] see Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d 210, 216–17 (S.D.N.Y. 2010) (§ 1981 and the NYSHRL claims); but see Felder v. U.S. Tennis Assoc., 27 F.4th 834, 848 (2d Cir. 2022) ("[U]nlike Title VII," § 1981 plaintiffs can "under certain circumstances . . . sue persons other than [their] employers."). Employment discrimination plaintiffs may assert employer liability against entities that are not their "formal, direct employer" under either the single employer or joint employer doctrines. Barbosa, 716 F. Supp. 2d at 216–17; accord Arcuelo v. On-Site Sales & Mktg., LLC, 425 F.3d 193, 197 (2d Cir. 2005).

A single—or integrated—employer relationship exists "where two nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a single employer." Clinton's Ditch Cooperative Co. v. Nat'l Lab. Rel. Bd., 778 F.2d 132, 138 (2d Cir. 1985). Four factors determine whether an entity constitutes a single employer: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership. See Bautista v. PR Gramercy Square Condominium, 642 F. Supp. 3d 411, 422 (S.D.N.Y. 2022) (citing Radio & Tel. Broadcast Technicians Local Union v. Broadcast Serv. of Mobile, Inc., 380 U.S. 255, 256 (1965)). "Whether two related entities are sufficiently integrated to be treated as a single employer is generally a question of fact not suitable for resolution on a motion to dismiss." Brown v. Daikin Am., Inc., 756 F.3d 219, 226 (2d Cir. 2014); Salemi v. Boccador, Inc., No. 02 Civ. 06648 (GEL), 2004 WL 943869, at *4 (S.D.N.Y. Apr. 29, 2004) ("Whether a parent and subsidiary meet the standard for integration under

[3] The C&W Defendants do not dispute that they meet the definition of an "employer" under Title VII: "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b).

Title VII is ultimately an issue of fact for the jury."). Of those four factors, the third—centralized control over labor relations—"is the central concern." Murray v. Miner, 74 F.3d 402, 404 (2d Cir. 1996). To determine "whether a plaintiff adequately alleges centralized control over labor relations . . . the central question is '[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination.'" Brown, 756 F.3d at 228 (quoting Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1241 (2d Cir. 1995)).

Alternatively, a joint employer relationship "may be found to exist where there is sufficient evidence that the [defendant] had immediate control over the other company's employees." Nat'l Lab. Rel. Bd. v. Solid Waste Servs., 38 F.3d 93, 94 (2d Cir. 1994). The focus is whether "two or more employers exert[ed] significant control over the same employees . . . [or] where . . . it can be shown that they share or co-determine those matters governing essential terms and conditions of employment." Bautista, 642 F. Supp. 3d at 422 (quoting Nat'l Lab. Rel. Bd. v. Browning-Ferris Indus., Inc., 691 F.2d 1117, 1124 (3d Cir. 1982)). Courts may look to "commonality of hiring, firing, discipline, pay, insurance, records, and supervision," to determine whether joint employer status is met. Id. Whether joint employment status exists is "essentially a factual issue," which, like single employer status, "is not suitable to resolution on a motion to dismiss." Bautista, 642 F. Supp. 3d at 422; see Lawrence v. Int'l Bus. Mach. Corp., No. 12 Civ. 8433 (DLC), 2017 WL 3278917, at *16 (S.D.N.Y. Aug. 1, 2017) ("The joint employer and single employer doctrines frequently require discovery to resolve."). "To survive a motion to dismiss, therefore, a plaintiff need only allege facts sufficient to put [the defendant] on notice of the theory of employer liability upon which [the] claims are based." Fowler v. Scores Holding Co., Inc., 677 F. Supp. 2d 673, 681 (S.D.N.Y. 2010); see Barbosa,

716 F. Supp. 2d at 219 (explaining that joint-employer doctrine requires plaintiff to "plead enough facts so that the claim is facially plausible and gives fair notice to defendants of [their] theory of employer liability[]").

## V. DISCUSSION

The C&W Defendants contend that Steinberg's threadbare, conclusory allegations concerning the employment relationship fail to plead a plausible inference that they were her employer. (See generally ECF Nos. 74; 80). Steinberg argues that the FAC includes sufficient allegations concerning her employment with the C&W Defendants, and the C&W Defendants' relationship with each other, at the pleading stage. (See generally ECF No. 77).[4]

### A. Single Employer

Mindful that single employer status is not a question "suitable for resolution on a motion to dismiss[,]" Brown, 756 F.3d at 226, we find that the FAC's allegations that the C&W Defendants, Pinnacle, and the Cappelli Defendants shared interrelated operations, common management, common ownership, and centralized control over labor relations and were therefore integrated to a degree sufficient to deem them a single employer of Steinberg in this action. See Bautista, 642 F. Supp. 3d 422.

First, as to the C&W Defendants and Pinnacle, the FAC alleges that each of the C&W Defendants share a corporate address in Chicago, and that Pinnacle, Cushman & Wakefield Global, Inc., and Cushman & Wakefield U.S., Inc. are all subsidiaries of Cushman & Wakefield PLC, which the Cappelli Defendants hired to supply property management services at 3Thirty3. (ECF

[4] The C&W Defendants submitted Steinberg's 2022 W-2 Form and her pay statements with the Motion, which Steinberg asks us not to consider. (ECF Nos. 73-2; 73-3; 77 at 14–16). Because we can decide the Motion without review or reliance on those documents, we need not and will not consider them here.

No. 46 ¶¶ 20–24, 29, 31). Although "group pleading will not suffice to hold a parent corporation liable under either the joint employer or single employer doctrines[,]" Lawrence, 2017 WL 3278917, at *6, the FAC does not suffer from that flaw and Steinberg alleges a sufficient relationship between Pinnacle and each of the C&W Defendants here. She alleges that the C&W Defendants shared a common corporate address; Pinnacle is a subsidiary of Cushman & Wakefield PLC; "Cushman & Wakefield" offered Steinberg at-will employment at 3Thirty3 and reserved the right to fire her at any time; "Cushman & Wakefield" made bi-weekly payments to Steinberg; 3Thirty3 employees' email addresses identify the C&W Defendants; Pinnacle and all C&W Defendants were "listed as [her] employer when she requested her employment data"—to justify discovery into whether and to what extent each of the C&W Defendants may be held liable as Steinberg's employer. (ECF No. 46 ¶¶ 20–29). These allegations allege a sufficient degree of integration between the C&W Defendants to justify deeming them a single employer.

Second, as to the operations, ownership, and management relationship between the C&W Defendants and the Cappelli Defendants at 3Thirty3, Steinberg alleges: (i) her email signature and some internal communications identify the C&W Defendants as Steinberg's employer (id. ¶¶ 20, 25, 26, 28); (ii) the Report shows that Steinberg's employer was "Cushman & Wakefield/Pinnacle" during her employment at 3Thirty3 (id. ¶ 29); (iii) her "bi-weekly direct deposits came from a bank account named 'Cushman & Wakefield Payments EFT'" (id. ¶ 27); (iv) the Cappelli Defendants "directly funded" and "actively monitored" "Cushman & Wakefield's payroll account for all Cushman & Wakefield employees working at or for 3Thirty3" (id. ¶ 53); (v) the Cappelli Defendants exerted an "unusual degree of involvement with building management and the day-to-day workflow of 3Thirty3's Cushman & Wakefield property

management team[,]" which Steinberg supported with examples of specific instructions and directions that agents of the Cappelli Defendants gave Steinberg and 3Thirty3 employees concerning "job postings, hiring, building signage, event promotion, parking issues, vendor issues, hardware issues, apartment staging, utilities, and repairs" (id. ¶¶ 32–57). Read together, the allegations show common ownership and management, and interrelated operations and control of 3Thirty3 and the employees who worked there, supporting a plausible inference that the C&W and Cappelli Defendants acted as an integrated entity at 3Thirty3. See Brown, 756 F.3d at 228.

Third—focusing on the central concern of the single employer doctrine—in addition to the allegations that "Defendants all had immediate control over Steinberg, including the power to pay her salary, hire, fire, or otherwise control her daily activities[,]" Steinberg specifically alleges that the C&W and Capelli Defendants exercised centralized control over labor relations with employees at 3Thirty3, including Steinberg: (i) agents of the Cappelli Defendants interviewed and "made the final decision to hire" Steinberg; (ii) the Cappelli Defendants "had the final say in all management decisions, including, but not limited to, all hiring and firing decisions regarding Cushman & Wakefield employees working at or for 3Thirty3"; (iii) the C&W Defendants sent Steinberg a letter offering her at-will employment at 3Thirty3, which the C&W Defendants "may terminate . . . at any time"; and (iv) Steinberg was directed to contact the C&W Defendants' HR department to resolve work-related disputes at 3Thirty3. (ECF No. 46 ¶¶ 25, 34, 35). The FAC thus plausibly shows that the C&W Defendants and the Cappelli Defendants could both make "final decisions regarding employment matters related to" Steinberg. Brown, 756 F.3d at 228;

(see ECF No. 46 ¶¶ 25, 34, 35). Accordingly, the FAC sufficiently alleges the C&W Defendants' centralized control over labor relations at 3Thirty3. See Brown, 756 F.3d at 228.

The C&W Defendants' reliance on Musiello v. CBS Corp., 518 F. Supp. 3d 782 (S.D.N.Y. 2021) for the proposition that Steinberg failed to sufficiently allege that the C&W Defendants were her employer is unpersuasive. (See ECF Nos. 74 at 11–12; 80 at 7). Unlike the plaintiff in Musiello, who failed "to allege facts that would support a reasonable inference that" the defendant "participated in final decisions regarding her employment process[,]" 518 F. Supp. 3d at 790–91, Steinberg specifically alleges that Pinnacle was a subsidiary of Cushman & Wakefield PLC, she was directed to engage in the C&W Defendants' human resources processes, the C&W Defendants paid her bi-weekly, her employment records named the C&W Defendants as her employer, her work email address contained the C&W Defendants' name, and the C&W Defendants—not Pinnacle or the Cappelli Defendants—delivered her offer of at-will employment at 3Thirty3 and reserved the right to terminate it at any time. (ECF No. 46 ¶¶ 20, 25–29).

Similarly, the C&W Defendants misplace their reliance on Peterec v. TGI Fridays, Inc., No. 23 Civ. 8028 (KMK), 2024 WL 4337526 (S.D.N.Y. Sept. 25, 2024). (See ECF Nos. 74 at 11–13; 80 at 7). To start, Peterec considered whether the plaintiff alleged certain defendants were "covered employers" under the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq., and the NYSHRL in the business franchise context, 2024 WL 4337526, at *4–5, so that case is at most relevant only as to Steinberg's claims under the NYSHRL. In any event, unlike the plaintiff in Peterec—who failed to allege that the defendants were sufficiently "interrelated" or that there existed "commonality of hiring, firing, discipline, pay, insurance, records, [or] supervision," 2024 WL 4337526, at *5—Steinberg alleges facts sufficient to show that the C&W Defendants,

Pinnacle, and the Cappelli Defendants are interrelated and share common practices in hiring, firing, pay, and supervision. (See ECF No. 46 ¶¶ 20, 24–29).

We note that the FAC does not explicitly label the C&W and Cappelli Defendants as a single employer. (ECF No. 46 ¶¶ 30–32; see also id. ¶ 17 ("[Steinberg] was jointly employed by Defendants.")). Even so, the FAC plausibly alleges that Defendants, although "nominally separate entities[,] are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a single employer." Clinton's Ditch Cooperative Co., 778 F.2d at 138. Discovery will no doubt illuminate the true relationship among Defendants but, at this early stage, Steinberg alleges enough to obtain discovery into the extent of the C&W Defendants' liability as a single employer.

**B. Joint Employer**

The FAC alleges "facts sufficient to put [the C&W Defendants] on notice of the theory of employer liability upon which [the] claims are based." Fowler, 677 F. Supp. 2d at 681. As previously explained, the FAC alleges that all Defendants were Steinberg's joint employers, and that the C&W Defendants exerted control, together with the Cappelli Defendants, over, at least, the decision to hire or fire Steinberg and to control her compensation. (ECF No. 46 ¶¶ 25, 27, 34, 53). The FAC thus sufficiently puts the C&W Defendants on notice of Steinberg's theory of joint employer liability and supports that theory with allegations plausible to show that Defendants were her joint employers. See Barbosa, 716 F. Supp. 2d at 219 (finding plaintiff's allegation that one defendant "operated, managed, and controlled" the other two defendants sufficient to show joint employer status at pleading stage).

Accordingly, because the FAC sufficiently alleges that the C&W Defendants were Steinberg's employer based on either a single or a joint employer theory, we respectfully recommend that the Motion be DENIED.

### C. Leave to Amend

We need not consider Steinberg's request for leave to amend because we recommend denying the Motion. For completeness, however, if the Court ultimately grants the Motion in whole or in part, we would grant Steinberg leave to amend to assert additional allegations regarding the C&W Defendants' status as a single or joint employer. See Fed. R. Civ. P. 15(a)(2) (courts "should freely give leave [to amend] when justice so requires"); Acharya v. 7-Eleven, Inc., No. 18 Civ. 8010 (PAC), 2019 WL 6830203, at *3 (S.D.N.Y. Dec. 13, 2019) (granting leave to amend where amended complaint lacked allegations sufficient to show joint employer status); Chui-Fan Kwan v. Sahara Dreams Co. II Inc., No. 17 Civ. 4058 (RA), 2018 WL 6655607, at *4 (S.D.N.Y. Dec. 19, 2018) (granting leave to amend where amended complaint lacked allegations sufficient to show single or joint employer status).

## VI. CONCLUSION

Accordingly, we respectfully recommend that (i) the Motion (ECF No. 72) be **DENIED**, and (ii) Cushman & Wakefield National Corporation be **DISMISSED** as a defendant pursuant to Federal Rule of Civil Procedure 41(a)(2).

Dated: New York, New York
March 11, 2025

**SARAH L. CAVE**
**United States Magistrate Judge**

* * *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), or (F)). A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Ho.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).